AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 01 2018

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 18 MR 378
Rebecca Calvillo (a.k.a. Rebecca Castillo) )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Sections 1791, 371, and 841 | (1) Possession/providing contraband in prison, (2) Conspiracy, and (3) Possession of controlled substance |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Eric S. Benn, Senior Special Agent
*Printed name and title*

Sworn before me by reasonable electronic means.

Date: April 29, 2018

_____
*Judge's signature*

City and state: Albuquerque, NM

Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

STATE OF NEW MEXICO    )
                       )  ss
COUNTY OF EL PASO      )

1. I, Eric S. Benn, being first duly sworn on oath, depose and state as follows:

2. 

3. **INTRODUCTION AND SUMMARY**

4. 1. I am a Senior Special Agent with the United States Department of Justice, Office of

5. the Inspector General (OIG). I have been employed as a Special Agent since August of 1997. I

6. am classified, trained, and employed as a federal law enforcement officer with statutory arrest

7. authority charged with conducting criminal investigations of alleged violations of federal

8. criminal statutes, including Title 18 and 21 of the United States Code. I am currently assigned as

9. a Special Agent in the OIG's El Paso Area Office in El Paso, Texas, and have been so employed

10. for the past 21 years.

11. 2. I am a graduate of the Criminal Investigator Training Program at the Federal Law

12. Enforcement Training Center located in Brunswick (Glynco), Georgia. During this program I

13. received instruction in Constitutional and statutory laws and all phases of basic criminal

14. investigations to include the execution of Search and Seizure Warrants, at the Federal Law

15. Enforcement Officer level. As a Special Agent with the DOJ/OIG, I am responsible for

16. investigating allegations of misconduct involving employees of the Department of Justice, to

17. include law enforcement officers of the FBI, DEA, ATF, United States Marshals Service, Bureau

18. of Prisons, United States Attorney's Office, and their contractors. I routinely investigate

19. violations of federal laws, including violations of Title 18 and 21 of the United States Code.

AFFIDAVIT OF ERIC BENN--  UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   3. I have personally participated in this investigation and am thoroughly familiar with the
2   information contained in this affidavit either through personal investigation or through
3   discussions with other law enforcement personnel.
4   4. Based upon my experience and having worked narcotics investigations, I am familiar
5   with the controlled substances Fentanyl, heroin, cocaine, marijuana and related materials used to
6   package and distribute that substance.  I have on several occasions participated in the execution
7   of search warrants where narcotics substances have been located and seized.
8   5. Based upon my experience and training, and further based upon discussions with
9   employees of the Sandoval County Detention Center, Federal Bureau of Prisons, and other law
10  enforcement agents, with years of personal experience in the area of narcotics law enforcement, I
11  know the following:
12              A. That incarcerated person often utilize staff or their friends and/or
13                 associates to smuggle contraband, to include narcotic substances and cell
14                 phones, into the facilities wherein they are housed.
15              B. That in order to arrange the smuggling of contraband, to include narcotic
16                 substances and cell phones, into the correctional facilities wherein they
17                 are housed, those persons often utilize jail/prison telephones to contact
18                 the staff member or their friends and/or associates;
19              C. That in a further effort to avoid detection by prison security personnel,
20                 those incarcerated persons often attempt to utilize in their smuggling
21                 efforts staff or friends and/or associates who might arouse the least
22                 suspicion, i.e. children and/or associates with little or no criminal
23                 history.

AFFIDAVIT OF ERIC BENN--

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

6. In the opinion of your affiant, based on your affiant's experience as a law enforcement officer who has worked prison/jail investigations for over 21 years and further based upon the information contained in this affidavit, there exists probable cause to believe that contraband, to include controlled substances and other property, more fully described herein, would be material evidence in a criminal prosecution for violations of Title 18 U.S.C. § 1791, Possession/Providing contraband into a prison; Title 21 U.S.C. § 846, Conspiracy, and Title 21 U.S.C. § 841 (a) (1) Possession of a controlled substance with intent to distribute. Further, in the opinion of your affiant, there exits probable cause to believe that contraband, to include heroin, marijuana, Fentanyl, methamphetamine, cell phones, and/or other property associated with the use and distribution of the controlled substances, will be concealed on her person or in her property.

7. The following information is derived from my personal observations, surveillance, review of physical evidence, review of reports, and discussions with other law enforcement officers, who have personal knowledge of the matters covered in those reports, and from conversations with persons, further identified below, who have personal knowledge of the events described herein.

    A. On April 27, 2018, your affiant became aware through discussions with the Assistant Director of the Sandoval County Detention Center (SCDC) that amounts of controlled substances, to include heroin, marijuana, Fentanyl, methamphetamine, etc., were allegedly being smuggled into the SDCD by an individual associated with the Trinity Services Group, a company that provides commissary services to the SCDC. This information originally came to the attention of the SCDC from an inmate of the SCDC.

    B. According to the inmate, federal prisoner Dennis Griego uses Rebecca

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1         Calvillo, a Trinity Services Group employee, to smuggle quantities of heroin,

2         marijuana, Fentanyl, methamphetamine, etc., into the facility. Calvillo, who

3         began working at the SCDC on January 18, 2018, works for the Trinity

4         Services Group by supplying inmates with commissary items. Calvillo has

5         allegedly smuggled heroin, marijuana, Fentanyl, methamphetamine, etc., into

6         the SCDC previously for Griego and receives payment for doing so. Calvillo

7         allegedly receives payment for doing so via Western Union. Calvillo also

8         meets others on the outside of the facility to obtain the contraband that she

9         smuggles to the facility. Calvillo allegedly smuggles contraband into the

10        facility inside her body cavity, removes the contraband, and places the

11        contraband in Griego's bag of commissary that Calvillo delivers to Griego.

12        The inmate was asked if he/she wants to purchase heroin, marijuana, Fentanyl,

13        methamphetamine, etc., because they are expecting a delivery on Monday,

14        April 30, 2018. The inmate was told Calvillo is smuggling the contraband into

15        the SCDC.

16     C. The inmate also provided information that a cell phone was previously

17        smuggled into the SCDC, possibly by Calvillo. Calvillo allegedly smuggled

18        contraband into the black inmates at the SCDC before she started smuggling

19        contraband into Griego.

20     D. Calvillo and Griego allegedly communicate with one another through use of

21        the SCDC inmate telephone system. In an effort to corroborate the informant's

22        information, the SCDC Assistant Director reviewed telephonic conversations.

23        As part of that investigation, the calls of inmate Griego were monitored. It was

1  determined that Griego placed telephone calls to telephone numbers (505) 900-
2  4434 and (505) 289-4621.  It was revealed that telephone number (505) 900-
3  4434 was supplied by Calvillo to the SCDC as her personal cell phone number.
4  The SCDC Assistant Director's monitoring of calls by Griego to both
5  telephone numbers revealed Griego talking to a female, whose voice was
6  recognized as Calvillo's.
7  E. The search of the two telephone numbers through the SCDC inmate telephone
8  system also revealed that inmate Lane Reed was calling Calvillo at telephone
9  number (505) 900-4434.  Both telephone numbers were run through the SCDC
10  inmate telephone system and it was that search that revealed that both Reed
11  and Griego were calling the numbers.
12  F. During the period April 16, 2018, to April 28, 2018, a number of
13  conversations between Calvillo and Griego were monitored and recorded by
14  SCDC personnel.  During those conversations Calvillo and Griego discussed
15  the delivery of contraband into the SCDC by Calvillo using coded language.
16  G. An April 16, 2018, phone call between the two revealed Calvillo and Griego
17  talk in disguise about Griego having a cell phone and wanting Calvillo to
18  smuggle a phone charger to him.  Griego tells Calvillo that his friend wants to
19  talk to Calvillo but not on the system because of the security.  Griego tells
20  Calvillo that he plans to put batteries together to charge the phone and they will
21  call her in an hour or so.
22  H. In an April 17, 2018, phone call between the two, Calvillo tells Griego that
23  she is putting something together for tomorrow in the morning.  Calvillo says,

1          "You know. You already know. I am getting it ready for tomorrow."

2         I. An April 23, 2018, call between Calvillo and Lane was monitored. Lane
3            asking Calvillo is she's straight and Calvillo replies, "Probably not this week."
4            Calvillo tells Lane that she hears stuff and it's probably not good for them
5            because it's not safe right now. Lane replies that they just want to put it in her
6            hand for next Monday. Lane requests Calvillo meet the friends of an unknown
7            inmate "who live kinda of far way" so they know she has it. Lane says that if
8            Cavillo cannot bring the other stuff in right now if it is possible if she could at
9            least pick up a pack of cigarettes so he could make some money. Cavillo
10           agrees and tells Land, "Just don't get me caught up." Lane tells Cavillo that he
11           will have money sent to her via Western Union. Lane tells Cavillo that hears
12           about everything and knows about the "Negros" and asks Cavillo if she is not
13           "fucking with them anymore" and she replies "no." Lane provides Cavillo
14           telephone number (505) 221-4509 and tells her to ask for Tammy and tell
15           Tammy that she (Cavillo) needs to pick the stuff up for Jeff.

16           J. An April 24, 2018, call between Calvillo and Griego was monitored. In the
17           call Griego asks Calvillo if she picked up his "homie's" glasses. Calvillo
18           responded by telling Griego that they are not ready yet and tells Griego to tell
19           his "homie" not to have his people call her at 9:30 p.m. to 10:00 p.m. at night.
20           Calvillo says she was pissed because they called her at that time.

21           K. Approximately six telephone calls between Griego and Calvillo were
22           monitored on April 28, 2018. Towards the end of 8:33 a.m. call Calvillo tells
23           Griego that she needs to go to the store to get something because it's bigger

than I expected. Calvillo says she needs to make sure it's the right size to fit in it because it's bigger than she expected. Griego asks, "You got the thing?" Calvillo responds by saying, "I got it and I need to size it up to make sure everything fits good."

L. In an April 28, 2018, call between Griego and Calvillo at 10:35 a.m., Griego asks Calvillo why she previously asked him about how much coffee he drinks. Calvillo responds by saying I was asking more about the packing of the coffee instead of the amount. Calvillo than says Griego should get a candy bar.

M. In an April 28, 2018, call between Griego and Calvillo at 10:39 a.m., Griego asks Calvillo "What about everything else? Do you think the mom can get the presents for our son on Monday?" Calvillo responds, "Yea."

N. In an April 28, 2018, call between Griego and Calvillo at 12:46 p.m., Griego asks Calvillo how the security at stadiums and the airport are now. Calvillo tells Griego that it's not bad. Calvillo says she can go through the devices and she puts her stuff on the side.

8. Based upon your affiant's experience in this and other prison narcotics investigations, and based upon my conversations with SCDC personnel, I know that inmates are aware that their telephonic conversations can be monitored at any time. As a result, inmates and the individuals with which they converse often speak in coded language in an effort to thwart detection of their illegal activities. Based upon my own experience and conversations with those other investigative personnel, your affiant believes that the terms utilized in those monitored conversations, i.e. "candy bar", "coffee packaging", "needing to go to the store to get something because it is bigger than I expected" are all referring to quantities of a controlled substance, other

AFFIDAVIT OF ERIC BENN--

contraband, or contraband smuggling activities. Based on my experience, your affiant also believes Calvillo's statement "Just don't get me caught up" is Calvillo's acknowledgment of her participation in the illegal activity.

9. Based on your affiant's experience in this and other prison narcotics investigations, and based on my conversations with SCDC personnel, I know that contraband, to include narcotics and cell phones, are smuggled into prisons/jails in various manners, to include inside body cavities.

### Conditions Precedent to Execution of Search Warrant

The requested search warrant will not be executed until each of the following events has occurred:

1. Rebecca Calvillo will travel to the SCDC on Monday, April 30, 2018. She will enter the SCDC.
2. Furthermore, the execution of the search warrant for Rebecca Calvillo will only be conducted once she has proceeded past the front door and main entry area of the SCDC on April 30, 2018.
3. Once these anticipatory conditions are met the affiant, assisted by other OIG agents, and SCDC officials, will execute the requested warrant before Rebecca Calvillo proceeds past the security checkpoint of the SCDC.

Based on the aforementioned, there is probable cause to believe that Rebecca Calvillo, along with Dennis Griego, Lane Reed, and other individuals are involved in a conspiracy to possess and distribute heroin, marijuana, Fentanyl, methamphetamine, and other controlled substances,

in violation of Title 18 U.S.C. § 1791, possession/providing contraband into a prison; Title 21 U.S.C. § 846, Conspiracy, and Title 21 U.S.C. § 841 (a) (1), possession of a controlled substance with the intent to distribute; and that her person is being utilized to facilitate this endeavor.

Further your affiant sayeth not.

_____
Eric S. Benn
Senior Special Agent
Department of Justice Office of the Inspector General

Sworn to before me by reasonable electronic means this 29th day of April, 2018.

_____
United States Magistrate Judge Laura N. Fashing
District of New Mexico

**ATTACHMENT A**

AFFIDAVIT OF ERIC BENN--

**Person and Things to be Searched**

The person to be searched is Rebecca Calvillo, the person depicted in the photograph below. The search of Rebecca Calvillo will include her body cavities as well as the property that she brings into the prison to include bags, purses, clothing, pockets, boxes, packages, containers of any sort.

The search of Rebecca Calvillo's person will be conducted in a private location in the jail by a female law enforcement officer.



**ATTACHMENT B**

AFFIDAVIT OF ERIC BENN--

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**Particular Things to be Seized**

1. Records of drug transactions, in particular, ledgers, names and/or code names or nicknames and/or identifying information reflecting customers, amounts of drugs bought and sold, amounts of money paid, owed or collected.

2. Large amounts of U.S. currency.

3. Any and all drug customer lists, dealers lists, or any notes containing the individual names of such persons, telephone numbers and/or addresses of these customers or dealers and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, or cash received to pay for controlled substances or intended to pay for controlled substances.

4. Telephone and address books or notes containing telephone numbers and addresses of coconspirators to include any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

5. Any cellular phone(s) found on the person of Rebecca Calvillo or contained within any bag, purse, item of clothing, pocket, box, package, or container of any sort the search of which is authorized under this warrant. The search of any cellular telephone(s) will occur at a later date at a controlled location.

6. Records, receipts, bank statements and records, money drafts, money gram receipts (wire transfer receipts) letters of credit, money orders and cashier's checks received or sent, passbooks, bank checks, safe deposit box key(s), safes and other items evidencing the obtaining, secreting and/or concealment, and or expenditures of money.

7. Books, records, receipts, diaries, notes ledgers, and other papers relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed.

8. Controlled substances, drug paraphernalia, drug packaging.

9. Any item of contraband that the rules and regulations of the Sandoval County Detention Center prohibit to be brought inside the facility.

10. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

AFFIDAVIT OF ERIC BENN--

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970